UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RORY MAZUR,

    Plaintiff,

v

WAL-MART STORES, INC., d/b/a
WAL-MART SUPERCENTER STORE #1432,

    Defendant.

_____/

Case No. 5:05-cv-00085

Hon. Gordon J. Quist

**ORAL ARGUMENT
REQUESTED**

| | |
|---|---|
| Daniel P. O'Neil (P37051) | Kiffi Y. Ford (P54852) |
| THOMPSON, O'NEIL & VANDERVEEN, P.C. | DYKEMA GOSSETT PLLC |
| Attorneys for Plaintiff | Attorneys for Defendant |
| 309 E. Front Street, P.O. Box 429 | 124 W. Allegan, Suite 800 |
| Traverse City, MI 49684 | Lansing, MI 48933 |
| Tele:  (231) 929-9700 | Tele: (517) 374-9177 |

**WAL-MART STORES, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL
DISCOVERY AND SANCTIONS, AND REQUEST FOR ORAL ARGUMENT**

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES ................................................................................................. iii

I. INTRODUCTION ....................................................................................................1

II. FACTUAL BACKGROUND ...................................................................................2

    A. The Underlying Dispute ...............................................................................2

    B. Wal-Mart's Discovery Requests ...................................................................3

    C. Plaintiff, Rory Mazur Discloses The Existence Of Additional Relevant Documents At His Deposition ......................................................................4

    D. Bonnie Mazur Fails To Produce The Relevant Documents At Her Deposition *Duces Tecum*, Verifies The Existence Of The Summary Of Her Notes Created Prior To The Mazur's Speaking With Counsel, And Admits To Destroying The Original Notes Once She Summarized Them On Her Computer ........................................................................................................5

    E. Wal-Mart's Final Attempt To Obtain Plaintiff's Documents And To Prevent The Potential Destruction Of Evidence .........................................7

III. ARGUMENT .............................................................................................................8

IV. CONCLUSION ........................................................................................................10

# INDEX OF AUTHORITIES

**Cases**

*In re Costs and Attorney Fees*, 250 Mich. App. 89; 645 N.W.2d 697 (2002) ................................ 9

*Wrench LLC v. Taco Bell Corp.*, 212 F.R.D. 514 (W.D. Mich. 2002) ........................................... 8

**Statutes**

28 U.S.C. § 1332 ............................................................................................................................ 1

**Other Authorities**

81 Am. Jur. 2d *Witnesses* § 390 .................................................................................................... 9

**Rules**

Fed. R. Civ. P. 37(a)(4) ............................................................................................................ 2, 10

**I.     INTRODUCTION**

Plaintiff, Rory Mazur, is a former employee of Defendant, Wal-Mart Stores, Inc. ("Wal-Mart").  In his lawsuit, originally filed on April 29, 2005, in the Wexford County Circuit Court, Plaintiff alleges disability discrimination in violation of Michigan's Persons With Disabilities Civil Rights Act.  Subsequently, on May 25, 2005, Plaintiff's lawsuit was removed to this Court pursuant to 28 U.S.C. § 1332 (Diversity Jurisdiction).

On July 12, 2005, this Court entered its Case Management Order, which required discovery to be completed no later than January 15, 2006.  In compliance with the Court's Case Management Order, Wal-Mart made several timely requests for particular notes that were originally handwritten by Bonnie Mazur, and which she subsequently summarized on her computer.  According to Mr. And Mrs. Mazur's testimony, they generated these notes contemporaneously with various events occurring during Mr. Mazur's employment at Wal-Mart. Mrs. Mazur testified that the notes were authored and summarized prior to Mr. Mazur engaging any legal counsel, and the couple was not instructed by legal counsel to create them or to summarize them on the computer.  Notably, Mrs. Mazur testified that after she summarized the notes on their computer, **she destroyed** all handwritten versions on which the summary was based.

The notes and the summary of these notes are clearly relevant and discoverable in the instant matter.  In fact, Plaintiff's counsel acknowledged the relevancy of the notes during Mr. Mazur's deposition when he agreed to provide the notes Mr. Mazur described that his wife took as long as they were not created at his request. (Rory Mazur's Deposition, p. 24).  However, now, despite the clear relevancy of these notes and their summary – since Mrs. Mazur destroyed the originals and created the summary well in advance of ever engaging counsel or speaking with

1

their current counsel – in response to repeated requests for the notes and summary, Plaintiff's counsel has asserted that the summary is not discoverable because it is allegedly an attorney-client privileged communication. Plaintiff not only waived any alleged attorney-client privilege with respect to the summary of the notes, but also, the law is quite clear that the attorney-client privilege does not apply to the Mazurs' notes or their computer generated summary of the notes.

Accordingly, on January 12, 2006, after previous, repeated and unsuccessful attempts, Wal-Mart made a final request to Plaintiff for production of the subject notes and/or Plaintiff's summary of those notes. Included with that request was a subpoena to inspect Plaintiff's computer's hard drive and other storage devices. Plaintiff's counsel refused to comply with the request, again asserting the attorney-client privilege, and filed a Motion for a Protective Order regarding Wal-Mart's subpoena.

For the reasons stated in this brief, this Court should compel Plaintiff to produce the notes, if they exist, and the summary of those notes because they are relevant and discoverable and they are not protected by the attorney-client privilege. Moreover, pursuant to Fed. R. Civ. P. 37(a)(4), this Court should order Plaintiff to pay Wal-Mart its expenses and attorney fees incurred by having to bring this Motion.

## II.   FACTUAL BACKGROUND

A.   The Underlying Dispute

Plaintiff claims that his conditions of employment at Wal-Mart and his termination constituted a violation of Michigan's Persons With Disabilities Civil Rights Act. According to Plaintiff's allegations, because of his claimed disability, Wal-Mart began a pattern of harassment against him, that included assignment to only menial tasks, repeated verbal abuse, unfair reprimands, and ultimate termination.

2

Contrary to Plaintiff's assertions, Plaintiff was terminated from his position as a custodial worker for legitimate, non-discriminatory reasons. Specifically, Plaintiff exhibited an increasing tendency of insubordination over the several months preceding his termination, and pursuant to Wal-Mart's disciplinary practice, was warned on several occasions that continued conduct of this nature would result in progressive discipline, up to and including termination.

Finally, on or around May 9, 2004, Plaintiff was terminated for a violation of work rules. He had engaged in the conduct resulting in his termination despite having received several prior warnings not to engage in such behavior.

**B.    Wal-Mart's Discovery Requests**

Wal-Mart has repeatedly requested Mr. and Mrs. Mazur to produce the notes or summary of the notes that the Mazurs generated contemporaneously with the events that form the basis of Mr. Mazur's Complaint. (Sections C and D below discuss in detail the nature of these notes and summary). On August 2, 2005, Wal-Mart served Plaintiff with its first set of Interrogatories and Requests for Production of Documents. Interrogatory No. 14 requested Plaintiff to provide a response to the following:

> If, since the occurrence of the acts described in the Complaint, Plaintiff discussed the facts underlying his lawsuit with anyone other than his attorney, identify in detail all such communications (including the identity of the person with whom he discussed the lawsuit, the date of the discussion, the topic of the discussion, the location of the discussion and any **notes regarding the discussion**).

This request clearly asks for the types of notes that are the subject of this motion. Nevertheless, Plaintiff answered:

> I have discussed the facts underlying this lawsuit with my wife on a number of occasions. I have also expressed my belief that I was not treated fairly by Wal-Mart to my friends and relatives. I don't know the exact dates or locations of those discussions.[Plaintiff did not assert any privileges with respect to this Interrogatory.]

3

Curiously absent from Plaintiff's answer is the identification of notes that were originally handwritten by Mrs. Mazur, and which she subsequently summarized on her computer – all of which were created prior to any discussions the Mazurs had with any attorney. Of course, now, as a result of Mr. and Mrs. Mazur's deposition testimony, Wal-Mart has learned of the existence of these notes and their summary.

Even more interesting is the fact that because Plaintiff admittedly possesses a summary of numerous discussions the Mazurs had, no argument can be made for Plaintiff's failure to provide the requested information about those conversations in Interrogatory No. 14. Plaintiff has simply refused to comply with the Court Rules by withholding non-privileged, relevant information. Even if the summary of Mrs. Mazur's notes is privileged, which it is not, the information sought about those conversations is not attorney-client privileged. Notably, Plaintiff failed to raise any privileges with respect to this Interrogatory – waiving any privileges even if they existed.

Wal-Mart's First Requests for Production of Documents was also served on Plaintiff on August 2, 2005. Various of Wal-Mart's document requests clearly encompassed the notes and summary at issue as well. (*See e.g.*, Document Request Nos.3, 4, 7, and 8, attached hereto as Ex. A). Notably, Plaintiff did not raise any privilege with respect to these document requests either. Nevertheless, Plaintiff never produced the notes or the summary of the notes here at issue.

**C.     Plaintiff, Rory Mazur Discloses The Existence Of Additional Relevant Documents At His Deposition**

Contrary to Plaintiff's answers to Wal-Mart's Interrogatories and Requests for Documents, Plaintiff's deposition testimony revealed the existence of notes that were taken by his wife concerning his experiences at Wal-Mart, which form the basis of Plaintiff's Complaint:

4

> Q. Did your wife ever take notes concerning your events that happened at your employment at Wal-Mart?
>
> A. Yes, she had, because I'm not good at writing, and as I spoke with her -- she wrote it down as I spoke.
>
> Q. And what did you ask your wife to write down concerning your employment at Wal-Mart?
>
> A. The things that happened at Wal-Mart.
>
> Q. Things that you felt were wrong at Wal-Mart --
>
> A. Yes. Yes.

(Rory Mazur, Deposition, p. 10, pertinent excerpts are attached hereto as Ex. B).

Upon learning of the existence of these notes, Wal-Mart's counsel noted on the record that Plaintiff had not produced any such notes despite the plain requests for these sorts of documents. (See Rory Mazur's Deposition, p. 12, Ex. B). In response, Plaintiff's counsel stated, "They weren't [produced]. What he's referring to is the summary that was prepared for me at my request, and so it's – I believe it's protected by the attorney/client privilege." (Rory Mazur, Deposition, p. 12, Ex. B). Wal-Mart later learned, however, that the summary of the notes was not generated at Mr. O'Neil's request. (See Section D below).

Later, Plaintiff's counsel stated "I don't have any handwritten notes, they haven't been given to me. I'll check with her [Mrs. Mazur] and see if she has them. If she has handwritten notes that weren't prepared at my request, we'll turn them over." Plaintiff's counsel plainly acknowledged the non-privileged nature of any notes that weren't prepared at his request and waived any privilege with respect to those notes by not asserting a privilege and by agreeing to deliver them if they existed.

**D. Bonnie Mazur Fails To Produce The Relevant Documents At Her Deposition *Duces Tecum*, Verifies The Existence Of The Summary Of Her Notes Created Prior To The Mazur's Speaking With Counsel, And Admits To Destroying The Original Notes Once She Summarized Them On Her Computer.**

5

On January 3, 2006, Wal-Mart filed its Amended Notice of Taking Deposition *Duces Tecum* of Bonnie Mazur. Because Wal-Mart had learned of the existence of notes compiled by Mrs. Mazur that were relevant and discoverable, it again requested those specific documents in its Notice of Taking Deposition *Duces Tecum*. (See Exhibit A of Amended Notice of Taking Deposition *Duces Tecum* of Bonnie Mazur, attached hereto as Ex. C). Despite Wal-Mart's requests, Mrs. Mazur did not produce the notes or the summary of those notes.

However, Mrs. Mazur did testify that she generated the notes Mr. Mazur described in his testimony contemporaneously with various events occurring during Mr. Mazur's employment at Wal-Mart. (See Bonnie Mazur's Deposition, p. 51, pertinent excerpts attached hereto as Ex. D). Mrs. Mazur then testified that she subsequently summarized the contents of these notes in her computer and that after they were summarized, **she destroyed the originals**. (See Bonnie Mazur's Deposition, p. 52, Ex.D ). Mrs. Mazur's further testimony reveals the true nature of her summary of those notes:

> Q. My question for you is when you – when did you transcribe your handwritten notes onto your computer?
>
> A. **It was probably sometime during 2004.**
>
> Q. And you destroyed your handwritten notes after you transcribed it?
>
> A. **Yes, I did.**
>
> Q. Was it before or after you engaged Mr. O'Neil?
>
> A. **I believe it was before.**
>
> Q. Okay. And you spoke about another lawyer that you spoke with.
>
> A. Yes.
>
> Q. And what was his name?
>
> A. A Pete or Peter Shumar.

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·124 W. ALLEGAN STREET, SUITE 800·LANSING, MICHIGAN 48933

6

Q. Did you ever engage Mr. Shumar as your lawyer?

A. **No, we did not**.

Q. And did you transcribe your handwritten notes onto your computer before or after you spoke with Mr. Shumar?

A. **Before.**

Q. How long before?

A. Possibly a couple of weeks before the appointment.

Q. Why did you transcribe the notes onto your computer?

A. Just to mark down some important things and get rid of the scrap papers and make it more organized so that, when we spoke to Mr. Shumar, we'd be able to tell him different things to help refresh our memories.

Q. But you had not spoken to him at the time that you transcribed the notes onto the computer?

A. **No, not at all.**

(Bonnie Mazur's Deposition, pp. 54-55, Ex. D).

Although Plaintiff now asserts that this summary of the notes described by Mrs. Mazur is protected by the attorney-client privilege, Mrs. Mazur's explicit testimony clearly belies this assertion. Mrs. Mazur testified that the notes were authored and summarized prior to Mr. Mazur engaging any legal counsel, and the couple was not instructed by legal counsel to create them or to summarize them on the computer. More importantly, the summary of the Mazur's notes is the only available record of this evidence since Mrs. Mazur admitted she destroyed the original evidence because she did not need the originals after she transcribed them into her computer.

E. **Wal-Mart's Final Attempt To Obtain Plaintiff's Documents And To Prevent The Potential Destruction Of Evidence**

On January 12, 2006, Wal-Mart sent a letter to Plaintiff's counsel as its final attempt to seek Plaintiff's compliance in producing the Mazurs' notes or their summary. (Attached hereto as Ex. E) In its letter, Wal-Mart notified Plaintiff that it would file the instant Motion to Compel

7

if Plaintiff did not comply with Wal-Mart's request. Attached to the letter was a subpoena to the Mazurs to produce and permit inspection and copying of the Mazur's "computer – including hard drive and any and all computer discs, CD's or computer recordings containing documents created by Bonnie Mazur and/or Rory Mazur." This subpoena is necessary since Mrs. Mazur testified that she created and saved the summary of the notes on her computer, and that at the time of her deposition she believed that the summary still existed on her computer. (See Bonnie Mazur's Deposition, p. 53). Wal-Mart stated on the record during Mrs. Mazur's deposition that it would pursue this subpoena. (See Bonnie Mazur's Deposition, p. 53). Subsequently, Wal-Mart's attorney met with Plaintiff's counsel in person and Plaintiff's counsel refused to comply with the request, again asserting the attorney-client privilege, and indicated that he would seek to quash Wal-Mart's subpoena. Accordingly, Wal-Mart field the instant Motion to Compel.

### III.   ARGUMENT

According to this Court:

> **Because this is a diversity case governed by Michigan law, the Court must apply Michigan law in determining whether the privilege applies.** Fed.R.Evid. 501. *See also Jewell v. Holzer Hosp. Found., Inc.,* 899 F.2d 1507, 1513 (6th Cir.1990). The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). **Under Michigan law, the attorney-client privilege attaches to confidential communications made by the client to his attorney for the purpose of obtaining legal advice.** *McCartney v. Attorney Gen.,* 231 Mich.App. 722, 731, 587 N.W.2d 824, 828 (1998)(per curiam). The privilege also generally protects communications from an attorney to a client, including the attorney's opinions, conclusions, and recommendations based upon the facts furnished by the client. *Hubka v. Pennfield Township,* 197 Mich.App. 117, 121-22, 494 N.W.2d 800, 802 (1992)(per curiam).

*Wrench LLC v. Taco Bell Corp.*, 212 F.R.D. 514, 516 (W.D. Mich. 2002) (emphasis added). Thus, this Court has held that "while confidential communications between attorney and client are protected, the privilege does not extend to facts included in such communications." *Id.* at

8

517. Accordingly, pursuant to Michigan precedent, the scope of the attorney-client privilege is narrow and "does not automatically shield documents given by a client to his attorney." *In re Costs and Attorney Fees*, 250 Mich. App. 89, 99; 645 N.W.2d 697 (2002). As the *In re Costs and Attorney Fees* court stated:

> Pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following the transfer by the client in order to obtain more informed legal advice.

*Id*. at 99-100.

The law is clear – "[n]o privilege attaches to an instrument by reason of its passage from an attorney to his or her client, or vice versa, where the instrument existed prior to the formation of the relation of attorney and client . . ." 81 Am. Jur. 2d *Witnesses* § 390. In that same vein, "[t]here is no specific discovery privilege for documents in an attorney's file; thus, a party may not cloak a pre-existing document or document created by a third party with the attorney-client privilege simply by forwarding it to his or her attorney." *Id*.

Here, the notes and summary of those notes at issue, were not "communications made by the client to his attorney for the purpose of obtaining legal advice." The notes and summary were created prior to any communications with an attorney. Mrs. Mazur testified that the notes were authored and summarized prior to Mr. Mazur engaging any legal counsel, and the couple was not instructed by legal counsel to create them or to summarize them on the computer. (Bonnie Mazur's Deposition, pp. 54-55). Thus, although the summary of the notes may have been given to the attorney to aid him in rendering legal advice, the notes and summary were pre-existing documents that Plaintiff cannot shield with the attorney-client privilege by simply transferring them to his attorney.

## IV. CONCLUSION

For all of the foregoing reasons, this Court should order Plaintiff to produce the subject notes, if they exist, and the summary of those notes, which Plaintiff's counsel admittedly has in his possession. Also, this court should order Plaintiff to comply with the subpoena to inspect the Mazurs' computer. Lastly, pursuant to Fed. R. Civ. P. 37(a)(4), this Court should order Plaintiff to pay Wal-Mart its expenses and attorney fees incurred by having to bring this motion.

Respectfully submitted,

DYKEMA GOSSETT PLLC

By: *Kiffi Y. Ford*
Kiffi Y. Ford (P54852)
Attorneys for Defendants
124 W. Allegan, Suite 800
Lansing, MI 48933
(517) 374-917

Dated: January 24, 2006

LAN01\151269.2
ID\ALV

10